*Tagged opinion*



**ORDERED in the Southern District of Florida on April 24, 2025.**

**Laurel M. Isicoff, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:                                                CASE NO. 24-23368-BKC-LMI

SOUL WELLNESS LLC,                      Chapter 11
                                                           Subchapter V
         Debtor.
_____/

### ORDER ON DEBTOR'S APPLICATION FOR APPROVAL OF EMPLOYMENT OF ATTORNEY JACQUELINE CALDERIN AND AGENTIS PLLC AS GENERAL BANKRUPTCY COUNSEL FOR THE DEBTOR-IN-POSSESSION

This matter came before the Court for hearing on January 16, 2025 at 10:30 a.m. (the "Hearing") upon the *Debtor's Application for Approval of Employment of Attorney Jacqueline Calderin and Agentis PLLC as General Bankruptcy Counsel for the Debtor-In-Possession as of the Petition Date* (ECF #15) (the "Application") filed by the Debtor and the *United States Trustee's Limited Objection to Application to Employ Debtor's Counsel* (ECF #47) (the "Limited Objection") filed by the United States Trustee ("UST"). In the Limited Objection,

the UST objected only to the proposed characterization of a post-petition payment plan incorporated into the engagement letter attached to the Application. At the Hearing, the Court approved the Debtor's retention of counsel but deferred ruling, and requested further briefing, on whether the post-petition payments will be characterized as a post-petition retainer available only to pay Debtor's counsel or money held in trust, and subject to the claims of all administrative claimants should the Debtor's bankruptcy case be administratively insolvent.[1] The parties filed supplemental briefing[2] on the issue, which the Court has reviewed. Having considered the written submissions by the parties as well as argument at the Hearing, the Court holds that the Court has the authority to authorize post-petition retainers under certain circumstances but that the circumstances of this case do not support Counsel's (defined hereinafter) request for a post-petition retainer.

## FACTUAL BACKGROUND

On December 20, 2024 (the "Petition Date"), the Debtor commenced this bankruptcy case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Code"). The Debtor operates two fitness centers located in Miami, Florida and Fort Lauderdale, Florida.

---

[1] *Order Approving in Part Application to Employ Jacqueline Calderin and Agentis PLLC as General Bankruptcy Counsel for the Debtor in Possession as of the Petition Date and Setting Briefing Schedule* (ECF #54).

[2] *Memorandum of Law in Support of Application to Employ Attorney Jacqueline Calderin and Agentis PLLC [ECF #15]* (ECF #61) ("Debtor's Memo"); *United States Trustee's Response in Opposition to Memorandum of Law in Support of Application to Employ Jacqueline Calderin and Agentis, PLLC* (ECF #64) ("UST Response"); and *Debtor's Limited Reply to United States Trustee's Response in Opposition to Memorandum of Law in Support of Application to Employ Attorney Jacqueline Calderin and Agentis PLLC [ECF #64]* (ECF #70) ("Debtor's Reply").

Pre-petition, the Debtor retained Attorney Jacqueline Calderin and Agentis PLLC (collectively, "Counsel"), as its bankruptcy counsel and executed a retainer agreement which (subject to the provisions of this Court, the Code, and the bankruptcy rules and local rules) governs the relationship between the Debtor and Counsel (the "Retainer Agreement").[3]

Because, according to Counsel, the Debtor could only afford to pay Counsel a small pre-petition retainer, the Debtor and Counsel agreed that the Debtor would set aside a sum every month to cover a portion of Counsel's fees and expenses and the Subchapter V Trustee's fees and expenses as a post-petition retainer (the "Post-petition Retainer")[4]. The Retainer Agreement provides that (subject to Court approval) the Debtor would deposit $6,000 each month—$5,000[5] earmarked for Counsel's post-petition fees and expenses; and $1,000 for the Subchapter V Trustee, which funds would be held by Counsel in its trust account. The Retainer Agreement provides that these funds would be payable to Counsel and the Subchapter V Trustee only upon application by each and approval of this Court.

On December 23, 2024, Counsel filed the Application. On January 14, 2025, the UST filed the Limited Objection, objecting only to Counsel's request that the monthly payments into its trust account on account of Counsel's fees be characterized as a post-petition retainer arguing first, that any proposed use

---

[3] The Retainer Agreement is attached to the Application as Exhibit A.
[4] The exact language in the Retainer Agreement is: "You further agree to pay the sum of $6,000 on the 1st day of month [sic] after the case filing to Agentis PLLC during the pendency of the case as a post-petition retainer towards future fees."
[5] Counsel announced at the Hearing that, in order to assist Debtor with its cash flow, it had reduced the monthly payment amount to Agentis from $5,000 per month to $3,500 per month.

3

of property of the estate requires application pursuant to 11 U.S.C. §363; and second, that holding such funds as a retainer as opposed to holding them merely in trust gives Counsel the equivalent of a super-priority claim for its fees over any other administrative claim. Instead, the UST argues that the Court should enter an order holding that any funds transferred to Counsel's trust account post-petition remains property of the estate for the potential *pro rata* benefit of all administrative claimants, and not just for the benefit of Counsel.

## ANALYSIS

Initially the UST appeared to object to payments of post-petition retainers in general; but in its post-Hearing submission the UST recognizes that post-petition retainers are appropriate so long as certain criteria are satisfied. However, the UST argues that such criteria are not satisfied in this instance. The UST does not object to Counsel's retention on the terms set forth in the Application because, the UST argues, holding the funds in trust does not change the funds' characteristic as property of the estate. The UST does object to treating those escrowed funds as a retainer, as provided by the terms of the Retainer Agreement, because a retainer provides extra security for payment of Counsel's fees to which Counsel is not entitled.[6]

The law is clear that the Court has discretion to authorize a post-petition retainer under 11 U.S.C. §328(a). Section 328 provides that a debtor in possession may employ a professional "on any reasonable terms and conditions

---

[6] In contrast, the UST has not objected to treating post-petition funds deposited for the benefit of Subchapter V trustees as retainers. The UST argues that, unlike a debtor's original counsel, a Subchapter V trustee does not have an opportunity to obtain a retainer, and some assurance of payment, before the case is filed.

4

of employment, including on a retainer." 11 U.S.C. §328(a). The "retainer" in section 328 is not qualified by any pre-petition payment requirement. *See In re Knudsen Corp.*, 84 B.R. 668, 672 (B.A.P. 9th Cir. 1988); *see also In re Golden Fleece Beverages, Inc.*, 2021 WL 6015422, at *4 (Bankr. N.D. Ill. 2021); *In re Mariner Post-Acute Network, Inc.*, 257 B.R. 730–31 (Bankr. D. Del. 2000). The issue is what should a court consider when determining whether to grant the request.

The UST's first objection is that Counsel failed to seek authority for payment in accordance with 11 U.S.C. §363(b). The UST argues that, as the Post-petition Retainer will be paid from property of the estate, and section 363(b) provides the mechanism for the use of property of the estate outside of the ordinary course of business, such as the use of property of the estate for post-petition retainers, Counsel was required to seek relief pursuant to section 363(b). *See Golden Fleece,* 2021 WL 6015422, at *4. "Retainers to bankruptcy counsel are not paid in the ordinary course of business, but the Code provides a method for obtaining court approval to use property of the estate outside of the ordinary course. . . . Simply because postpetition retainers are not ordinarily part of the compensation arrangement, however, does not bar their use." *Id.*  However, this Court has authorized payment of post-petition retainers from estate funds many times over the past nineteen years – whether to committee counsel, or special counsel, or even substitute debtor's counsel. Never, in any of those instances, has authorization been sought under section 363(b). And never, previously, has the UST argued that section 363(b) authorization is required. Indeed, as noted by the court in *Knudsen,* the payment of a post-petition retainer is authorized

5

under section 328, which provides independent authority for the payment. *See Knudsen*, 84 B.R. at 670–71. *Accord In re Raocore Tech., LLC,* 2025 WL 828880 (Bankr. D.D.C. 2025); *Mariner Post-Acute Network,* 257 B.R. 723 (in each case the issue of the appropriateness of a post-petition retainer was considered without any reference whatsoever to section 363(b)).[7]

Having determined that allowance of a post-petition retainer paid out of estate funds is appropriate under certain circumstances, and that a formal request citing to section 363(b) is not required, the Court will now turn to what the Court should consider in determining whether to approve such a request.

The Debtor cites to *Knudsen*, 84 B.R. 668 and *Golden Fleece,* 2021 WL 6015422 in support of its argument that the Court should approve the Post-petition Retainer. In *Knudsen*, the Ninth Circuit Bankruptcy Appellate Panel considered whether the bankruptcy court has authority to approve a fee payment and application procedure that permits periodic post-petition payments to professionals without prior court approval of the payments. In reaching its conclusion that the requested fee retainer provisions were appropriate, the court outlined the following four factors a court should consider when reviewing compensation arrangements that depart from typical pre-petition retainer agreements:

> (1) the case is an unusually large one in which an exceptionally large amount of fees accrue each month;
> (2) the court is convinced that waiting an extended period for payment would place an undue hardship on counsel;

---

[7] If a creditor had a security interest in the Debtor's funds, Counsel would be required to seek authority to use the cash collateral to pay any post-petition funds, whether as a retainer or otherwise. In this case, the SBA agreed to use of its cash collateral to fund the Post-petition Retainer.

6

> (3) the court is satisfied that counsel can respond to any reassessment in one or more of the ways listed above; and
> (4) the fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

*Knudsen*, 84 B.R. at 672–73.

In *Golden Fleece*, the Bankruptcy Court for the Northern District of Illinois approved a post-petition retainer for a Subchapter V debtor's replacement counsel and in doing so looked to the factors set forth in *Knudsen*. *Golden Fleece*, 2021 WL 6015422, at *4–5. However, the court noted that its consideration was not limited to the four factors set forth in *Knudsen*.

> The *Knudsen* factors may be more or less important, and there may be other relevant factors, depending on the circumstances of the case. *See In re Mariner Post-Acute Network, Inc.,* 257 B.R. 723, 731 (Bankr. D. Del. 2000) (other factors could include whether debtors would prefer monthly rather than quarterly payments, the effect of the proposal on the court's ability to adequately review fee applications, the economic impact of the payment arrangement on the debtor, the debtor's ability to reorganize, and the reputation of proposed counsel).

*Id.* at *6.

In a more recent decision on this issue, the Court in *Raocore* outlined additional factors that it believes are appropriate to considering the appropriateness of a post-petition retainer for counsel. In *Raocore*, the court outlined its standards for approval of what the court called evergreen retainers. "In a chapter 11 case, an evergreen retainer agreement contemplates that a debtor's professional's interim compensation shall be paid from the debtor's operating capital, holding the original retainer for application towards a final fee application." *Raocore,* 2025 WL 828880, at *4.[8]

---

[8] In applying those standards, the *Raocore* court declined to approve the requested retainer arrangement.

7

> [T]his Court agrees that reasonable evergreen retainers are permissible in certain chapter 11 cases with: (i) appropriate notice; (ii) specific disclosure of the existence of an evergreen retainer in any employment application filed with the Court; (iii) the inclusion of any retention agreement with any employment application; (iv) terms in the applicable retention agreement making clear that any amounts paid shall be held in trust until a final fee application is approved (or other time period as agreed by the parties and approved by the Court); and (v) ultimate approval of any employment application by the Court prior to any payments made by any entity thereunder. In addition to the foregoing notice and disclosure requirements, before approving an evergreen retainer provision, the Court must consider the reasonableness of the employment application and the underlying evergreen retainer, especially whether they are tailored to both the requirements of the Bankruptcy Code and the particular circumstances of the individual chapter 11 proceeding. *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003).
>
> Although no one factor is determinative, factors to be considered in determining whether the terms of a proposed retention are reasonable include (i) the relationship between the Debtor and the applicant, including whether the parties have equal bargaining power engaging in an arms-length negotiation; (ii) whether the proposed terms of retention are in the best interests of the estate; (iii) whether there is creditor opposition to the retention or retainer provisions; and (iv) whether given the size and circumstances of the case, the amount and terms of the retainer are reasonable, including whether the terms provide an appropriate level of risk minimization taking into consideration any other risk minimization factors such as an administrative order or carve-outs. *See id.*; *see also In re Knudsen,* 84 B.R. 668, 672–73 (B.A.P. 9th Cir. 1988) (holding that an applicant seeking approval of an evergreen retainer agreement bears the burden of establishing that the case is one in which such agreement is necessary, such as a case where exceptionally large fees will accrue each month or that waiting an extended period of time for payment would place an undue hardship on counsel). Additionally, if an applicant seeks approval of an evergreen retainer, the terms of the evergreen retainer must be clearly disclosed in the applicable employment application and the retention agreement outlining the terms and conditions of the evergreen retainer must be attached to the application. *See Insilco,* 291 B.R. at 636.

*Id.* at *5.

Like the courts in *Golden Fleece* and *Raocore,* the Court agrees that all of these factors provide guidance. Moreover, the Court also finds that, although

procedurally, citation to section 363(b) is not required, an additional consideration is whether the agreement by a debtor to negotiate a post-petition retainer is an appropriate exercise of the debtor's business judgment. Thus, in exercising its discretion, the Court must consider the arrangement both from the perspective of the professional and of the debtor.

Using this framework for guidance, the Court will review the Post-petition Retainer request, addressing some of the factors considered by the *Raocore* court.

**A. Notice and Disclosure**

The UST argues that the Application did not disclose the intended nature of the escrowed funds. Paragraph 14 of the Application provides: "the Debtor has agreed to deposit the sum of $5,000.00 per month to be held in trust for payment of court-awarded fees and costs to [Counsel]." The Retainer Agreement attached to the Application states that the monthly fees are to be held "as a post-petition retainer toward future fees." However, the Application only states the funds will be held in trust. While the Court agrees with the UST that the better practice would be to explicitly describe the intended nature of the funds to be deposited, because the Retainer Agreement was attached to the Application, the Court finds that the Application contained adequate disclosures.

**B. Relationship Between Counsel and Debtor**

This factor focuses on whether there is any kind of collusion, undue pressure, or other factor that would impact the decision by bankruptcy counsel or the debtor with respect to seeking either a pre-petition or post-petition retainer. *See, e.g., Raocore,* 2025 WL 82880, at *7. However, this Court finds

9

that the appropriate consideration is broader – is there anything about the pre-petition relationship between a debtor and the professional, from the perspective of either the debtor or the professional, that weighs in favor (or against) the approval of a post-petition retainer.

Counsel disclosed at the first day hearings that Counsel became familiar with the Debtor, its principal, and the employees of the Debtor because some members of the law firm exercise and train at the Miami facility. Counsel also disclosed that, based on the community outreach work offered by the Debtor and its staff, Counsel has come to admire the Debtor's mission beyond providing exercise and training. Thus, the relationship between the Debtor and Counsel reflects some relationship beyond mere attorney-client. This pre-petition relationship, combined with Counsel's admiration for the work done by the Debtor at its facilities, surely played a role in Counsel's decision to take the representation on such a small retainer.[9]

### C. Best Interests of the Estate

Counsel argues that without approval of the Post-petition Retainer, the Debtor would not have been able to obtain counsel to file this case on an emergency basis during the holidays. The UST points out that the Debtor had plenty of cash before the case was filed and Counsel, the UST argues, chose not to ask for a larger retainer. Counsel counters that the Debtor needed that money to address the imminent eviction from its Miami business premises, which eviction precipitated the filing of the bankruptcy case.

---

[9] In *Raocore* the court determined that this factor weighed against approval of an evergreen retainer because the negotiation between the debtor and the applicants was not at arms-length. *Raocore*, 2025 WL 828880, at *7.

Counsel also argues that the Debtor's proposed budget reflecting a projected allowance of the $3,500 per month to Counsel does not have any negative impact to the estate, nor would it impose an economic hardship on the Debtor, its business operations, or its ability to reorganize. Further, Counsel argues that approval of the Post-petition Retainer provided this cash-strapped Debtor a mechanism to be able to hire competent counsel to be able to successfully reorganize without being turned away at the outset for an inability to pay counsel.

However, as the *Raocore* court noted, "[w]hile the willingness of [Counsel] to represent a corporation engaged in significant pre-petition litigation and facing significant post-petition litigation did provide the benefit of allowing the Debtor to remain in bankruptcy, there was nothing unique brought to the case by [Counsel] different than any other bankruptcy firm accepting a [similar] engagement that would support approval of the [Post-petition Retainer] as in the best interests of the estate." *Id.* The Court agrees. Counsel knew of the Debtor's financial constraints at the inception of the case and chose to take the engagement, nonetheless. Moreover, the Court notes that the UST is not objecting to the monthly post-petition escrow of the funds with Counsel, only with its characterization of a retainer that is no longer property of the estate once deposited.

**D. Creditor Opposition**

While the UST is the only party who objected to the approval of the Post-petition Retainer, the Court notes that the only active creditor, the former landlord, is no longer involved. As this is a Subchapter V case, there is no

11

committee appointed, and the Subchapter V Trustee has not expressed any position except with respect to his own monthly deposit, to which the UST has not raised any objection. Thus, the Court will consider the UST's objection based on its right to be heard on all matters. *See* 11 U.S.C §307.

**E. Reasonableness of Post-petition Retainer Given the Size and Circumstances of this Case**

"As designed, subchapter V is intended to be a streamlined process for qualifying debtors resulting in lower costs to facilitate a more efficient reorganization. Given this background, it will be the truly rare subchapter V case that will be of a size and exceptional nature to warrant an evergreen retainer." *Raocore*, 2025 WL 828880, at *8. Counsel acknowledges this is not a "large" case[10] but argues that the amount of legal fees and costs required to take the Debtor to confirmation is "exceptionally large" for this particular Debtor. This is because, when Counsel filed this case, Counsel anticipated future litigation with Debtor's then landlord, in addition to other contested matters to resolve other creditor claims.[11] Although the case started out adversarial with the Debtor's prior landlord, those matters have been resolved. There do not appear to be any further anticipated contested matters. Moreover, Counsel knew that there was likely to be significant litigation with the landlord when it agreed to take the case; indeed, as already stated, the dispute with the landlord is the reason the case was filed. Therefore, the Court finds that there is nothing about the size and circumstances of this case that warrants a post-petition retainer.

---

[10] Debtor's Memo at 5.
[11] Debtor's Memo at 6.

The Court is also unconvinced that the failure to have the escrowed funds treated as a retainer creates an undue hardship on Counsel, shifting the burden of administrative insolvency to Counsel. However, as in any bankruptcy case, there is a point at which a pre-petition retainer, no matter how robust, may be exhausted. The exhaustion of a smaller pre-petition retainer merely causes the event to occur sooner. Moreover, Counsel can file an interim fee application if appropriate. Although interim fee applications are not common in Subchapter V cases, they are not prohibited. Thus, to the extent that this Subchapter V case cannot be concluded in as timely a manner as all would hope, the concerns raised by Counsel regarding risk of non-payment if the case becomes administratively insolvent can be mitigated somewhat by the filing of an interim fee application which, if granted, will cause all or part of the funds deposited to that time to be paid, subject only to disgorgement.[12]

Accordingly, the Court determines that this case is not a Subchapter V case of a size or exceptional nature to warrant authorizing the Post-petition Retainer.

## **CONCLUSION**

For the foregoing reasons, the Court finds that, while post-petition retainers are authorized under the Bankruptcy Code, and appropriate under certain circumstances, the facts and circumstances of this case do not support approval of the Post-petition Retainer.

It is therefore **ORDERED** as follows:

---

[12] The Court always retains its inherent authority to order disgorgement of all professional fees paid under 11 U.S.C. §§328, 330, 331.

1. The Limited Objection is **SUSTAINED**.

2. The Application is **DENIED** in part with respect to the Post-petition Retainer incorporated into the Retainer Agreement attached to the Application. However, the monthly deposit of funds is approved.

3. Any funds transferred to Counsel's trust account post-petition remain property of the estate.

###

Copies to:
Jacqueline Calderin, Esq.
Daniel L. Gold, Esq.

*Attorney Calderin is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*